## Morton, et al. v. Sanders.

(Decided January 29, 1918).

### Appeal from Campbell Circuit Court.

1. Arrest—Policeman—Right to Arrest.—A policeman or peace officer has a right to arrest one only (1) when he has a warrant directing him to do so, or (2) when a public offense has been committed in his presence, or (3) when he in good faith believes and has reasonable grounds to believe that the person arrested has committed a felony. The commission of an offense within another state will not authorize a policeman in this state to arrest the offender, even under the circumstances stated in the third ground above, unless he has a warrant legally procured authorizing him to do so.

2. Principal and Surety—Policeman's Bond—Liability of Surety.—A surety in the bond of a policeman is not liable except to the amount named in the bond; but a verdict for a sum within that amount will not be disturbed because the petition asks for a larger sum.

3. Appeal and Error—Remitter.—While the court may not cure an excessive verdict, or one which appears to have been returned under the influence of passion and prejudice on the part of the jury, by remitting a portion of it, still if the verdict as returned possessed neither of the vices mentioned, the defendant can not complain because of the remitter.

4. Arrest — Damages — Policeman — Illegal Arrest By. — Where a policeman arrested the plaintiff in the night time, taking him from

his sleeping quarters and from his family when the weather was cold, pointing a pistol in his face, throwing a flashlight therein, and perpetrating other indignities and carrying him a considerable distance to police headquarters where he was detained for more than an hour, contracting a cold and otherwise suffering from fright and humiliation, all done without a warrant or other legal authority, a verdict in favor of plaintiff for $999.00 is not deemed excessive.

L. J. CRAWFORD and HERBERT SHAFFER for appellants.

P. J. RYAN and WILLIAM A. BURKAMP for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 2, 1915, appellee and plaintiff, Forest Sanders, a colored man, was living with his family consisting of a wife and several small children in the second story of a building located on Central Avenue, in the city of Newport, Kentucky. Between twelve and one o'clock on the night of that day the appellant, Frank Morton (defendant below), who was a policeman in that city, with another officer went into the residence of plaintiff where he and his wife and children were asleep, threw a flashlight into his face, as well as a pistol, and arrested him and took him to police headquarters where he was subjected to a severe examination, after which he was released, returning to his home something like an hour and a half or perhaps two hours after he was arrested. To recover damages for the trespass committed, both to his person and to his premises, plaintiff filed this suit against Morton and the surety on his bond, the American Fidelity Company.

The plaintiff alleged in his petition that the trespass complained of was committed by defendant under color of his office and was done wrongfully, willfully, illegally, and without reasonable or probable grounds to believe that plaintiff had committed any offense; that he had committed no offense, and that defendant had no warrant or other process at the time authorizing him to make the arrest. It is also alleged that plaintiff was frightened, humiliated and disgraced because of the unlawful arrest; and further, that he contracted a cold because of the exposure he had to endure when they took him to police headquarters thinly clad, on account of defendant not allowing him to properly dress himself; that his eyes were injured because of the glaring flash-

light, for all of which he sought damages in the sum of $2,000.00.

The answer does not deny any of the acts complained of except that they were wrongfully, willfully or otherwise illegally committed. It is also denied that plaintiff was forced to go from his home to police headquarters, but that on the contrary he voluntarily made the trip. A trial resulted in a verdict in favor of plaintiff against both defendants for the sum of $999.00. A motion for a new trial was filed, and upon its hearing the court, under the impression that the verdict was excessive, required plaintiff to reduce it to the sum of $501.00, after which the motion was overruled, and judgment rendered for the latter sum, to reverse which the defendants prosecute this apepal.

A number of objections and exceptions were taken by defendants during the trial, which are relied upon in the motion for a new trial, but they all appear to have been abandoned on this appeal except the one that the verdict is excessive, and that its reduction by the court did not cure the error. A minor insistence is that the plaintiff sought a recovery for $2,000.00 against each defendant when the obligation of the defendant, American Fidelity Company, as surety for Morton, was limited in the bond to $1,000.00, which fact, under section 186d of the Kentucky Statutes, and this court's opinion in the case of Waddle, &c. v. Wilson, 164 Ky. 228, would confine the recovery as against it to the sum named in the bond, but we do not deem it necessary to give this point more than a passing consideration, because the verdict was less than the amount of the bond, and the fact that the plaintiff prayed for a larger sum can not under any rule of law or process of reasoning contravene the requirement of the statute or the doctrine of the case referred to. That requirement confines the *recovery* to the amount fixed in the bond, and is not affected in the least by the sum asked for in the pleading.

In disposing of the main question, i. e., the excessiveness of the damages assessed by the verdict, it will be necessary to briefly notice the testimony. Some time in the afternoon preceding the arrest, the police department of the city of Newport received information that a colored man residing in Newport had committed a murder in the city of Cincinnati, Ohio, and that he would likely be found "up on Central Avenue." A description

of the man was given, and the defendant, Morton, and his companion policeman were delegated to locate and apprehend the offender. So, between twelve and one o'clock that night, they entered plaintiff's house, according to his testimony, by breaking the lock to the outside door which entered the kitchen and from thence they opened the door leading into the bedroom, where they found plaintiff and his family asleep, as stated. Morton pointed a pistol in the face of plaintiff, waked him by shaking him on the shoulder, while the other policeman threw a flashlight of considerable strength in his face, causing plaintiff to be greatly frightened and alarmed. He inquired the reason for the presence of the policemen and they told him in substance to go with them to police headquarters and he would be told the reason. Plaintiff protested his innocence, but he was cursed and abused and finally made to go with the policemen against his will, only partially clad, and detained as hereinbefore set out. He was plied with many questions, and finally the conclusion was reached that he was not the man wanted, and he was released. The night was very cold and plaintiff insisted that he be given time to fully dress himself, but this was denied him, and he complains of a cold contracted thereby; the only contradiction made of this testimony is that plaintiff was not compelled to go to police headquarters, although defendant's companion states that he did tell plaintiff "to come up to headquarters." The defendant, Morton, is also contradicted by the testimony which he gave on the trial of a similar suit filed by plaintiff against the other policeman. Everybody admits that while at plaintiff's house his premises were searched and the privacy of his residence, as well as all of its compartments, was wholly disregarded.

A peace officer in this state, under the provisions of section 36 of the Criminal Code, may lawfully arrest one only in obedience to a warrant delivered to him, or without a warrant if a public offense is committed in his presence, or if he has reasonable grounds to believe that the arrested person has commited a felony. It is not pretended in this case that the defendant had any warrant for the arrest of plaintiff at the time, nor that the latter had committed any offense in the presence of defendant, nor that he had committed any felony within the jurisdiction of Kentucky. It would then seem to be

superfluous to argue that the information of the commission of a felony in another state, howsoever well founded in fact, would justify the arrest here complained of. The law provides how such offenders may be apprehended in this state, but it is sufficient to say that such provisions were not pursued in this case, and the only defense here interposed is that pertaining to the damages sustained.

Aside from what has been said, it appears that plaintiff is an industrious colored man, working at a legitimate and honorable business, that of teamster, in the pursuit of which he earned a living for himself and family. He arose early and worked late, and there is nothing to show that he was in the least a violator of the law, neither is there anything to cast a suspicion that he was the guilty person desired by the Ohio authorities. The evidence is sufficient to authorize the verdict of the jury in finding as it did, that the transaction occurred as detailed by plaintiff. At most the testimony for defendants produced a contradiction, making an issue solely to be determined by the jury, and it has so often been held by this court that a verdict on such conflicting evidence is conclusive on appeal and will not be disturbed that a recital of the cases so holding would be superfluous. Two of the latest of them are LeMoyne v. Neal, 168 Ky. 292, and Jett v. Jett, 171 Ky. 548. This rule also prevails where the verdict is contrary to the testimony of the greater number of witnesses, since in such cases it is the province of the jury not only to reconcile the contradictions found in the testimony, but to believe the testimony of some of them and disregard that of others. C. N. O. & T. P. Ry. Co. v. Richardson, 152 Ky. 814. This being true, the excessiveness of the verdict must be determined upon the facts as narrated by plaintiff, they being established by the verdict of the jury.

A similar case to the one here is Illinois Central Railroad Co. v. Wilson, 31 Ky. Law Rep. 789. In that case a verdict in favor of plaintiff for $1,000.00 was upheld as not being excessive. The charge in that case was that of robbing a fellow passenger of a pocketbook; the plaintiff was not detained in the actual custody of the officers of the law any longer than was plaintiff in the instant case, and the arrest was procured at the instance of the passenger who was robbed. True it was

alleged in that case that the conductor of the defendant detained plaintiff at the depot in the city of Louisville for a short while, and until a warrant could be procured for his arrest, and this was the only detention, if any, of which the railroad company was guilty, but it was furthermore claimed that while being detained plaintiff was searched by a policeman. There was very convincing testimony that the arrest and search of plaintiff and all of the indignities which he suffered were procured and brought about not by defendant, but by the man Steele, who claimed to have lost the pocketbook. The verdict, however, was in favor of plaintiff against the railroad company, and on appeal, as hereinbefore stated, it was held not to be excessive.

Another case in point is that of Franks v. Smith, 142 Ky. 232, wherein the plaintiff was arrested upon the public highway at night and detained until the next morning when he was released. Circumstances and conditions existed at the time of his arrest calculated to inspire the belief that plaintiff in that case was probably engaged in violating the law; but it was clearly shown that he was innocent, and the jury returned a verdict in his favor for the sum of $1,000.00. The facts of that case are lengthy and will not be repeated here, but they will be found fully set forth in the opinion. After the narration of the facts of the case and disposing of other questions raised, the opinion says: "It results from what we have said that the conduct of Franks and his associates in arresting Smith was indefensible. He had not committed any act that would justify a peace officer in arresting or detaining him." In disposing of the objection that the verdict was excessive, the opinion says: "It is said that the verdict against Franks is excessive, but we are not disposed to disturb it on this ground." See, also, Ross v. Kohler, 163 Ky. 583.

The authorities from this state referred to and relied on by counsel for appellant have no application here because they are cases of physical injury only, and those from other jurisdictions of a nature similar to this one can not be followed in the light of the former opinions of this court, even if the facts of them were similar to the ones here, which does not appear to be true. As said in the case of Johnson v. Jones, 44 Ill. 142, and quoted with approval in the case of Franks v. Smith, *supra*: "The right of the citizen to his personal liberty, except when

restrained of it upon a charge of crime and for the purpose of judicial investigation or under the command of the law pronounced through a judicial tribunal, is one of those elementary facts which lie at the foundation of our political structure. The cardinal object of our constitution, as it is the end of all good government, is to secure the people in their right to life, liberty and property.'' To this might be added that the right of privacy in one's home, carrying with it the freedom from molestation in its occupancy, except where it may be invaded as directed, and in the manner pointed out by the law, is equally as sacred as that of one's constitutional right to life, liberty and property. Here, without any warrant of law whatever, or even suspicious circumstances to lead one to believe that the plaintiff had committed any offense, his home was ruthlessly invaded in the dead hours of the night, its occupant in the same manner arrested and paraded upon the streets of the city of Newport, he being released only after he had successfully shown that he had committed no offense, and we are clearly of the opinion that even without the suffering of any physical injuries the verdict for $999.00 was not excessive.

It is insisted, however, that under the rule laid down in the cases of Brown v. Morris, 3 Bush 81; Johnson's Admr. v. Johnson, 104 Ky. 707, and Merrick v. Holt, 8 Ky. Law Rep. 162, and other cases from this court, that it was error for the court to require a remitter of a part of the verdict, which would be meritorious under the doctrine of those cases if the verdict as returned had been excessive or appeared to have been returned under the influence of passion or prejudice on the part of the jury; but under the conclusions we have reached neither of the objections mentioned are available against the verdict here, because, as we have seen, its amount ($999.00) was not excessive, nor is there anything to indicate that it was the result of passion or prejudice on the part of the jury. So the only one having a right to complain of the action of the court in the matter under consideration was the plaintiff himself, but he is not prosecuting a cross-appeal. Because an error was committed as against one litigant does not entitle the other one to complain of that error when it operated in his favor. This objection, therefore, is not available to the defendants.

Wherefore, the judgment is affirmed.