## Vinson v. Commonwealth.

(Decided April 22, 1927.)

### Appeal from Christian Circuit Court.

1. Indictment and Information.—Second count of indictment, averring that since taking effect of the statute defendant was convicted of unlawfully selling liquors, and that charge for which he was indicted was committed after that conviction, held good as against demurrer.

2. Criminal Law.—Where police officer made illegal entry into defendant's room without first demanding admittance, in view of Criminal Code of Practice, section 40, and without possessing a search warrant, evidence of his discovery of liquor found in bed in which defendant was sleeping held incompetent to prove defendant's illegal possession.

3. Arrest.—Since being drunk in one's own room is not an offense within the prohibition statute (Ky. Stats., Supp. 1926, section 2554a-24), officers were not authorized to enter defendant's room because of alleged disturbance heard therein and arrest him because he was drunk in their presence.

4. Criminal Law.—In prosecution for violation of the prohibition statute as a second offense, the police judge, before whom defendant was convicted of the first offense, should not be per-

mitted to testify orally as to what his record shows, but the record itself should be produced.

5. Criminal Law.—In prosecution for violation of the prohibition law as a second offense, where record showing defendant's first offense has been introduced, instruction should not assume that record showed defendant's first conviction, but should submit it to jury.

6. Intoxicating Liquors.—In prosecution for possessing intoxicating liquor, instruction that, if discovered liquor was in defendant's room and in bed which he occupied, then it is presumed to have been in his possession, unless jury believed beyond reasonable doubt that it was carried there without his knowledge or consent, held error, since, for inferred possession of liquor to be within inhibitions of the statute, defendant must be shown to have dominion over it.

7. Criminal Law.—In prosecution for possessing intoxicating liquor, instruction that, if liquor was found in defendant's room, it is presumed to have been in his possession, unless jury believed from evidence beyond reasonable doubt defendant had no knowledge of it held error as requiring jury to believe beyond reasonable doubt facts necessary to repel presumption of possession.

THOMAS P. COOK for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On March 1, 1926, the grand jury of Christian county returned an indictment against appellant and defendant below, Frank Vinson, in the first count of which he was accused of violating our prohibition statute by unlawfully possessing intoxicating liquors. The second count averred that, since the taking effect of the statute defendant had been convicted of unlawfully selling intoxicating liquors, and that the one for which he was indicted was committed after that conviction. The demurrer filed by defendant to the indictment was therefore properly overruled. His trial resulted in his conviction with an affixed punishment of confinement in the penitentiary for one year, followed by his motion for a new trial, which was overruled, and, from the judgment pronounced on the verdict, he prosecutes this appeal and urges through his counsel, as reversible errors, (1), the admission of incompetent evidence offered by the commonwealth over his objections and (2), improper instructions and the failure of the court to instruct upon the whole law of the case.

The incompetent evidence relied on in ground 1 may be subdivided into (a), the admission of the testimony of the officer of the discovery of the liquor in defendant's residence apartment, and which was made and done by the witness without a search warrant, and (b), the failure to prove defendant's first conviction by competent testimony. Defendant appears to be a man without a family, and he resided in apartments on the second story of a building on one of the principal streets of Hopkinsville, the lower story of which was occupied as a storeroom in which some kind of business was conducted, and the entrance into the apartment of defendant was by means of a stairway running from the pavement on that side of the street. The prosecuting witness (a policeman) stated that he was somewhere in the vicinity of defendant's apartments late one evening in November, 1925, and heard some "disturbance" up in, or supposed by him to be in, the premises occupied by defendant, and that he also heard some "swearing" at the same time. Thereupon he requested another policeman, who had been standing near the foot of the steps, to accompany him to defendant's room. The two then "tiptoed" up the steps and opened the door into defendant's room and found him and another occupying a bed therein; both occupants being sound asleep as well as soundly drunk. Witness threw back the covering on the bed and discovered a half gallon fruit jar lying between the two and about half filled with moonshine liquor. The accompanying policeman stated that the jar was in the hands of the other occupant of the bed. The officers arrested the two and took them to police headquarters, which they succeeded in doing, although the prisoners were in an advanced stage of intoxication. There was no light in the room when the officers entered, and they used a flash light that one of them had, and with the aid of which they made their discoveries.

The foregoing is the substance of what one of the policemen stated, and it is proven by himself and all of the other witnesses who testified in the case that he came from around the corner to the front of the building occupied by defendant, which was the fourth door from the corner. Other witnesses who were upon the pavement immediately at or close to the foot of the steps, including the other policeman, testified that there was no disturbance in defendant's apartment, and that he and his companion were sound asleep, and they also testified to

the same facts. So that the great preponderance of the testimony is that the prosecuting witness who testified to the "disturbance" and the "swearing" was, to say the least of it, in error when he did so, and, if the disposition of this appeal hinged upon the establishment of such fact (that there was disturbance and swearing in defendant's apartments), it is exceedingly doubtful if the verdict on that issue could be upheld because of being flagrantly against the evidence. It is the theory of the commonwealth, and indeed the only ground justifying the admission of the officers' testimony about discovering the liquor, that some misdemeanor was being committed in defendant's apartments, and that it justified the entry of the officers therein, and that the discoveries they then made were competent, although they possessed no search warrant.

A recent case, the facts of which are not precisely similar but involving the same principle, is that of Simmons v. Commonwealth, 203 Ky. 621, 262 S. W. 972. In that case the officer who claims to have acted on what he heard was about 100 yards from the alleged noise or disturbance and when he attempted to enter into the apartment of the accused the door was open. Upon entering, he discovered on a table an unconcealed bottle or jar containing liquor. The discovery made by the officer in that case was not by virtue of any act done by him to reveal or expose the liquor as was done by the prosecuting witness in this case when he turned back the covering on the bed. Other similar facts existed in the Simmons case, but we held that the officer therein had no legal right to go into the apartments of the accused, and that the testimony of what was discovered by his so doing, he not having a search warrant, was incompetent. The only material difference between the facts of that case and this one is that the prosecuting witness in this case, according to his testimony, perhaps, was some nearer to the place of the occurrences he claims to have heard than was the officer in the Simmons case.

Moreover, section 40 of our Criminal Code of Practice provides, in substance, that, before an officer in making an arrest may break open the door of a house occupied by the defendant he must demand admittance and explain the purpose for which it is desired. The record shows that no such course was pursued in this case, and, even if the officer had possessed a warrant for the arrest of defendant, the entry into his house by the officer

without first complying with the provisions of the Code section would be unauthorized and illegal. Surely he had no greater authority (even if we should admit, for the purposes of the case, that what he heard was sufficient to authorize an investigation by him and to arrest any one guilty of an offense committed in his presence while making such an investigation), than he would possess had he been armed with a warrant for the arrest of defendant. Neither did the fact that the officers found defendant drunk in his room authorize his arrest upon the ground that he was so in the presence of the officer, since being drunk at such a place is not an offense under section 24 of our present prohibition statute, now section 2554a-24 in the 1926 supplement to the Kentucky Statutes. See Maynard v. Commonwealth, 202 Ky. 684, 261 S. W. 10, and Harkleroad v. Commonwealth, 207 Ky. 552, 269 S. W. 724. We therefore conclude that the witness made an illegal entry into defendant's room, and, he not possessing a search warrant, his discoveries while there were incompetent to prove the illegal possession with which defendant was charged in the indictment. We might close the opinion at this point, but, inasmuch as the evidence on another trial may develop a different situation, we will briefly notice the other errors relied on.

The argument in support of division (b) under ground 1 is also well taken. The police judge before whom defendant was tried on his first charge was introduced and asked concerning defendant's trial and conviction. Counsel for defendant objected to the testimony, but his objections were overruled, and the witness was permitted to testify as to what his record showed. Clearly the only competent evidence of the fact of that conviction was the record itself if it was available, and there is no proof that it was not. If there should be another trial of the prosecution, the police judge should not be permitted to testify orally as to what his record showed, but the commonwealth should produce the record itself.

The only error we find in instruction No. 1 is its assumption that the record of the city police court of Hopkinsville showed defendant's first conviction, when, as we have seen, that record was not introduced. However, if it had been introduced, the instruction should not assume the fact but should submit it to the jury along with the other facts necessary to sustain the conviction.

In instruction No. 2 the court said to the jury that, if it believed beyond a reasonable doubt that the discovered liquor "was in the room rented and occupied by him (defendant) and in the bed which he occupied, then it is presumed in law to have been in his possession, and you should so find, unless you should believe from the evidence *beyond a reasonable doubt* that the whisky was carried to the room by another party, without the knowledge or consent or permission of the said Frank Vinson, and that he did not know of its being there." (Our italics.)  We think the quoted excerpt from the instruction is faulty in two respects: First, in both its definition of "possession," and in stating the presumption of law with reference thereto.  The mere fact that whisky was found in one's room or his bed might create a strong inference that it was in his possession, but by no means conclusive, since under such circumstances, in order for the inferred possession to come within the inhibitions of the law, defendant should also be shown to have had some sort of dominion over it, either permanent or temporary, and with the right and privilege to personally appropriate it or some part of it.  There is no statute creating the presumption that the court incorporated in its instruction, and we have been unable to find in any of the standard works or treatises on the criminal law where the court should indulge a presumption of law, either prima facie or otherwise, of the defendant's guilt.  It would perhaps be competent for the Legislature to so provide either in the act creating the offense or some other statute.  But without such legislative enactment we have been unable to find any authority that the court should indulge any such presumption.  See case of Jesse Bates v. Commonwealth, 218 Ky. 737, 292 S. W. 315.

The above excerpt from the instruction is also erroneous, because it required the jury to believe from the evidence "beyond a reasonable doubt" the facts necessary to repel the presumption of possession that the court submitted to the jury.  In other words, the jury was required to believe the exculpative facts "beyond a reasonable doubt," and which language was no doubt inserted by the court in its instruction through inadvertence.  It, however, had the effect to make the instruction erroneous and to alone require a reversal of the judgment, since it is thoroughly so established by the opinions of this and other courts, as well as by recognized authors on criminal practice.

For the reasons stated, the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.