## Cawood v. Commonwealth.

(Decided May 17, 1929.)

F. M. JONES for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

Opinion of the Court by Judge Thomas—Reversing.

Appellant, Bruce Cawood, was convicted at his trial on an indictment in the Harlan circuit court accusing him of the offense of carrying concealed a deadly weapon, and on his motion for an appeal therefrom it is insisted by his counsel that the judgment should be reversed because the court erred in overruling his motion for an instruction directing his acquittal, upon the ground that there was no competent evidence to prove his guilt.

The proof for the commonwealth, as shown in the narrative bill of evidence was, in substance, that a deputy sheriff of the county and another who was with him heard, but did not see, the firing of some shots down the railroad from where the two witnesses were stationed, in Cawood, Ky. They walked down the railroad in that direction about 100 yards from a commissary in the village and from the public road running through it, and they saw there (the distance not being mentioned) defendant and one Noe "on the railroad at this point." Defendant and his companion then walked over to a spring, to which latter place the officer and his companion went, and there found defendant lying on the ground "so drunk that he could hardly stand up." He was then arrested and searched, and there was found concealed on his person a pistol. The testimony for the defendant was that the place where the arrest and the search were made was "about 350 yards from any public highway," and more than that distance from the commissary at Cawood. The testimony as so briefly outlined was all that was heard upon the trial, and the court overruled defendant's motion for a peremptory instruction in his favor, and instructed the jury that, if it believed beyond a reasonable doubt that "the defendant Bruce Cawood was drunk on a railroad track at a point thereon reasonably near a turnpike, public store, or other place frequented by the public," and further believed that the officer arrested him therefor, and upon a search of his person found a pistol concealed, then they should convict him, to the giving of which defendant objected and excepted.

The officer had no warrant for either the arrest of defendant, or the searching of his person; but, under the provisions of subsection 2 of section 36 of our Criminal Code of Practice, and as held in an unbroken line of de-

cisions of this court, the officer had the right to arrest the defendant, if the latter committed a public offense in the presence of the officer, and it is insisted by the commonwealth that defendant was guilty of the public offense of being drunk at the time and place of his arrest, and, consequently, the officer legally arrested him, and which, if true, the subsequent search of his person was authorized, and the discovery made thereby was competent evidence against him. If the premise as a basis for that insistence is correct, i. e., that defendant committed a public offense in the presence of the officer, the conclusion is inevitably true, and which brings us to the real question in the case, and which is: Whether defendant, according to the evidence in the record, committed a public offense in the presence of the officer?

Under the provisions of section 24 of the act of March 22, 1922, chapter 33, page 109, of the published acts for that year, and which is commonly known as the "Rash-Gullian" Act (and now section 2554a-24 of the 1928 Supplement to the Kentucky Statutes), it is made a public offense to be drunk or intoxicated "on any public or private road, or in any passenger coach, street car. or other public place or building, or at any public gathering." Since the enactment of that statute, and in the cases of Lewis v. Commonwealth, 197 Ky. 450, 247 S. W. 749; Commonwealth v. Adams, 201 Ky. 421, 257 S. W. 45; Maynard v. Commonwealth, 202 Ky. 684, 261 S. W. 10; Harkleroad v. Commonwealth, 207 Ky. 552, 269 S. W. 724; Vinson v. Commonwealth, 219 Ky. 482, 293 S. W. 984; Yarbrough v. Commonwealth, 219 Ky 319, 292 S. W. 806, and all others wherein the question was involved, we have uniformly held that "the legislature saw proper, in enacting the section, to penalize drunkenness only at certain designated places, or under certain prescribed circumstances, and plainly did not make it a criminal offense to be drunk at other places than those designated or under other circumstances than the ones named." Maynard case, supra. In the Yarbrough case defendant was drunk and arrested by the officer on a hillside, and entirely away from any of the places enumerated in the statute, and it was held that the evidence found by a search of his person after his arrest was incompetent to prove his guilt of another offense discovered by the search, although the officer, before discovering defendant's drunken condition, heard loud and boisterous talking in the direction where he was later

found. The cited opinions hold that the section of the statute, supra, defines the only offense of drunkenness within this commonwealth. But it is insisted by the commonwealth that (a) defendant, Cawood, when arrested, was so near to a place mentioned in the statute, supra, as to come within it, and (b) that, if not so, then the officer had the right to arrest him under the provisions of section 394 of the Criminal Code of Practice prescribing that a drunken person may be arrested if found running "at large, and not in the care of some discreet person," each of which will be disposed of in the order named.

It will be recalled that the nearest distance from the point of arrest in this case to any of the places mentioned in the statute, and at which it is an offense to be intoxicated, under any interpretation of the testimony, was 100 yards. It is not shown that defendant at the time was disturbing the peace of any one, nor that the place of his arrest was even in view of any of the places mentioned in the statute, and it would be carrying our right and authority to construe statutes far beyond permissible bounds to say that the place where defendant in this case was arrested, and where it is claimed he was drunk, was included in any of those mentioned in the statute. Indeed, it was not as much so, or as nearly so, as some of the places in the cases, supra, wherein we held that the arrest was without authority, and the arrested defendant was not guilty because the proven drunkenness was not one as to constitute under the terms of the statute a public offense. Insistence (a), therefore, must be overruled.

Disposing of insistence (b), and assuming for the purposes of the case that section 24, supra, of the Rash-Gullian Act, had no repealing effect upon section 394 of the Criminal Code of Practice (but which is not now so determined), it nowhere appears in this record that defendant was subject to arrest under the express provisions of that section of the Criminal Code. It is admitted that at the time he was in company with, and in the presence of, Byrd Noe, who, so far as the record discloses, was sober, as well as a "discreet person." Under the express provisions of that section of the Code, an officer has no right to arrest a drunken person, found "at large," except under the circumstances therein named. It therefore is our conclusion that the testimony heard upon the trial did not disclose a legal arrest of defendant and that

being true the evidence of the arresting officer, discovered only through his search of the person of defendant after the illegal arrest, was incompetent against defendant on the trial of the indictment under which he was convicted, and the court erred in not sustaining his motion for an instruction directing his acquittal.

Wherefore the motion for appeal is sustained, the appeal is granted, and the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.